NOT FOR PUBLICATION                              [Dkt. No. 6, 22]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

MONICA A. THORS,

      Appellant,

        v.

RICHARD ALLEN,

      Appellee.

Civil Nos. 16-2224 (RMB),
16-2225 (RMB)

**OPINION**

---

APPEARANCES:

Monica A. Thors
    *Pro Se* Appellant

Travis J. Richards
141 High St.
Mount Holly, NJ 08060
    Attorney for Appellee

**BUMB**, UNITED STATES DISTRICT JUDGE:

    THIS MATTER comes before the Court upon the filing of two
appeals from determinations of the United States Bankruptcy
Court for the District of New Jersey.  Thors v. Allen, Civ. No.
16-2224; Thors v. Allen, Civ. No. 16-2225.  Appellant Monica
Thors's underlying bankruptcy proceeding is In re Monica Thors,

Bk. Pet. No. 15-17602-JNP.[1]  Having considered the arguments of
the parties as set forth in their briefs and at oral argument,
as well as the record on appeal,[2] and having labored to
understand those arguments, the Court hereby rules the
Bankruptcy Court's grant of limited stay relief to the Appellee
Richard Allen is AFFIRMED.  The Bankruptcy Court's determination
that the Allens did not willfully violate the automatic stay is
AFFIRMED.  The Court further rules that the issue of whether
Appellant Monica Thors's claim for damages arising from a
purported willful violation of the automatic stay due to the
Appellee's refusal to accept rent is not properly before this
Court – and is therefore dismissed for lack of jurisdiction –

---

[1] Documents cited from the Bankruptcy Court docket in this
Opinion will be referred to by their docket number: "[Bk. Dkt.
No. ____.]"
[2] At the outset, the Court notes that much of the factual
background that is laid out by the parties in their briefs may
or may not be in the record before the Court.  The task of
construing exactly what is and is not a part of the record has
been rendered near-impossible by the complete abandonment of
adherence to the rules of procedure by both parties.  To wit,
the Court has been absolutely inundated with piecemeal and
redundant filings, near-daily telephone calls, and supplemental
motions by Ms. Thors.  Many of the filings by Ms. Thors are
duplicative, incomprehensible, or both.  All the while, counsel
for the Allens remained unfortunately mum.  Indeed, counsel
admits in his (late-arriving) brief that he purposefully
disregarded the order of this Court to prepare a brief on his
legal contentions "due to the frivolous nature of the appeal,
the fact that the issue is moot and my attempt to save my client
the cost of responding."  (Sep. 6, 2016 Ltr. ("Allens App. Br.")
at 1 [Civ. No. 16-2224, Dkt. No. 17]).  This conduct renders an
already somewhat intractable matter needlessly complicated.

because a final order has not been issued.  Finally, the Court holds that the Bankruptcy Court did not err by not including Bankruptcy Rule of Procedure 4001(a)(3).  Any remaining issues appealed are not properly before this Court and as such, are dismissed for lack of jurisdiction.  Ms. Thors's motions for emergent relief and a fourth transcript are denied.

I.   **BACKGROUND**

A. **The Parties, the Contract, and the Lawsuits**

In September 2011, the parties to this appeal entered into a multi-faceted business arrangement.  Under their agreement (the "Contract"), Ms. Thors built two modular buildings[3] on the Allens' property[4] in Swedesboro, New Jersey, known as Willow Run Stable.  (Contract § 1 [Bk. Dkt. No. 34-2]).  The Contract also required Ms. Thors to pay rent to the Allens for the use of certain property, including the new buildings, using a complicated payment scheme that involved credits to rent based on the construction of stalls and paddocks by the parties to the Contract.  (Id. §§ 3, 4).  Ultimately, after a considerable amount of money was purportedly outlaid by Ms. Thors,[5] the

---

[3] As set forth in the Contract: "There will be built on the property owned by Allen[] two modular buildings [()5 stalls each including washstall and space for washer and dryer[)] that will be attached with a roof."  (Contract § 1).

[4] For purposes of this Opinion, the Court will refer to Richard Allen, the Appellee, and his wife collectively as "the Allens."

[5] For example, although determined in a decision after the institution of this appeal, Judge McDonnell, who presided over

3

business relationship soured and the record on appeal makes
clear that extreme vitriol took its place.  (Second Notice App.
at 19 [Civ. No. 16-2225, Dkt. No. 1] ("The parties' agreement
was not an ordinary lease.  Ms. Thors and Allens do not get
along and the continued presence of Ms. Thors at the property
has been increasingly difficult."); First Notice of App. at 5
[Civ. No. 16-2224, Dkt. No. 1] ("I enclose the history of Docket
no C 13-14, so the Bankruptcy Appeal Court can understand the
evilness, lies and untruth that Allens[,] started to in attempt
to 'get rid of me[.]'"); Allens Br. at 17 ("My initial failure to
respond to debtor's appeal was due to the frivolous nature of
the appeal . . . .")).[6]

     Despite an agreement in the Contract that neither party was
permitted to sue the other under its terms,[7] Ms. Thors filed a
Chancery action against the Allens on January 31, 2013.  (Allens

_____

the proceedings in New Jersey state court, found that Ms. Thors
had written a check for $129,653 to cover construction of
structures on the property.  (Allens App. Br. Ex. A (Aug. 10,
2016 Superior Court of New Jersey Gloucester County, Chancery
Division Opinion)).
[6] Judge McDonnell postulated that the bad blood began when, after
permitting Ms. Thors to make improvements to the property, Ms.
Thors presented the Allens with an owed credit of $167,133
dollars.  (Allens App. Br. Ex. A at 5 ("The presentation of the
credit requested was likely the start of a tumultuous
relationship between Ms. Thors and the Allens.")).
[7] Section 11 of the Contract contains the no-suit provision:
"There will be no lawsuits for any reason[,] including doctor or
hospital visits[,] disability, permanent disability,
disfigurement[,] or death[.] Any act of nature[,] negl[i]gence,
accidental[,] there will be no lawsuits."  Contract § 11.

4

Br. at 5-6).  Not to be outdone, despite the Contract's repeated language indicating that Ms. Thors could not be evicted for any reason, the Allens filed an action for eviction that was ultimately transferred to Chancery Court.  (Id. at 6.)  In those eviction proceedings, Judge McDonnell of the Superior Court of New Jersey, Gloucester County, Chancery Division (the "State Court") ordered on March 3, 2015 that Ms. Thors "shall vacate the property of Richard and Grace Allen and Willow Run Stables no later than April 30, 2015 at noon."  (March 3, 2015 Order ¶ 1, Thors v. Allen, et al., Dkt. No. GLO-C-4-13, Richard Allen, et al. v. Thors, Dkt. No. GLO-LT-2593-13 [Bk. Dkt. No. 34-5]).  The State Court continued, "Monica Thors is barred from returning to the property of Richard and Grace Allen and Willow Run Stables after April 30, 2015 and pending further order of the court."  (Id.)

**B. <u>The Bankruptcy Proceedings</u>**

Six days prior to the April 30, 2015 date set by the State Court for Ms. Thors to vacate the property, she filed the Chapter 13 Voluntary Bankruptcy Petition from which the instant appeals are taken.  (Petition, In re Monica Thors, Bk. Pet. 15-17602 [Dkt. No. 1]).  Ms. Thors's bankruptcy petition raised a legal issue regarding the confluence of several bankruptcy statutes and the application of the automatic stay provision. The stay provision, pursuant to 11 U.S.C. § 362(a), dictates:

> (a)   . . . [A] petition filed under Section 301, 302, or
> 303 of this title, or an application filed under
> section 5(a)(3) of the Securities Investor
> Protection Act of 1970, operates as a stay,
> applicable to all entities, of – . . .
>
>> (3)  any act to obtain possession of property of
>> the estate or of property from the estate or
>> to exercise control over property of the
>> estate[.]

Id.  However, property of the estate, by statute,

> does not include any interest of the debtor as a lessee
> under a lease of nonresidential real property that has
> terminated at the expiration of the stated term of such
> lease before the commencement of the case under this
> title, and ceases to include any interest of the debtor
> as a lessee under a lease of nonresidential real property
> that has terminated at the expiration of the stated term
> during a case under this title to obtain possession of
> such property.

11 U.S.C. § 362 (b)(1).  Moreover, the Trustee of a bankruptcy

estate is not permitted to assume a nonresidential lease that

has been legally terminated prior to the institution of the

bankruptcy proceeding.  See 11 U.S.C. § 365(c)(3)

In the Bankruptcy Court's mind, this framework raised the

question of whether Ms. Thors's interest in the property was

terminated on March 3, 2015 (the date of the State Court's

order) or whether a judgment of possession had not truly been

entered by the prospective language in that order.  In the

parties' mind, if the March 3, 2015 Order terminated Ms. Thors's

possessory interest on that date as the Allens argued, then any

proceedings to secure a warrant for removal could go forward.

(Br. in Opp. to Mot. Reinstate Stay at 1 [Bk. Dkt. No. 34-1].)
On the other hand, if the March 3, 2015 Order did not terminate
her possessory interest by April 24, 2015 when the Chapter 13
petition was filed, then the entire proceeding, including any
removal action, would be stayed pending the bankruptcy outcome.
(May 12, 2015 Hrg. Tr. at 9:9-20 [Dkt. No. 23]).[8]

### i. May 12, 2015 Hearing

To make sense of this legal issue, on May 12, 2015, the
Bankruptcy Court held a hearing to determine whether the State
Court's March 3, 2015 Order, which barred Ms. Thors from
accessing property, amounted to a judgment of possession for
purposes of the automatic stay.  The Bankruptcy Court noted that
it was difficult to determine whether the March 3, 2015 Order
itself amounted to a judgment for possession.  (Id. at 10:20-

---

[8] Ms. Thors's argument may have been slightly more nuanced.  It
appears as though she argued that the Allens had failed to
properly seek a warrant of removal after the attainment of a
judgment of possession.  (Id. at 10:5-9 ("That's what the law
says, that they have faced the issue of warrant of removal and
it's more than 30 days since the date of judgment of possession.
Therefore, a warrant can only be obtained with the consent of
the tenant or by order of the Court [.]")).  Judge Burns,
presiding over the bankruptcy proceeding, however, did not
accept this characterization of the posture of the case.  (Id.
at 10:10-16 ("Well [whether the Allens can obtain a warrant of
removal is] a State Court issue that if you want to bring up
with the State Court, you can bring up there.  Because that's
not an issue for bankruptcy.")).  Instead, Judge Burns focused
on whether the March 3, 2015 Order amounted to a judgment of
possession.  (Id. at 10:13-15 ("If there's been a judgment for
possession, then the State terminates, and that's what I'm
trying to find today.")).

22).  At oral argument, counsel for the Allens seems to have
agreed that the March 3, 2015 Order was not technically a
judgment for possession, but that it was "the closest thing we
have to a judgment for possession in Chancery Division[.]"  (Id.
at 12:1-6.)

Ultimately, the Bankruptcy Court was not able to assure
itself at the hearing of the fact that the March 3, 2015 Order
was a judgment of possession because the Order did not state
that Ms. Thors's possessory interest had terminated on the date
of the order, only that she was to vacate by April 30, 2015.
(Id. 20:4-10).  The Court reserved on the issue pending further
review of the applicable law.  (Id. at 10:23-24).

After that review, the Bankruptcy Court appears to have
preliminarily determined that the March 3, 2015 Order was not
clear enough to be a judgment for possession, because in a May
13, 2015 minute entry on the bankruptcy docket, an entry reads
that the motion for stay relief was granted in favor of the
Allens "for State Court to Clarify if Lease Hold Interest has
Terminated."  Based on the Bankruptcy Court's prior reasoning,
(id. at 31:6-14), stay relief would not have been required if
the March 3, 2015 Order was a judgment for possession.
Confirming the minute entry, on May 29, 2015, the Bankruptcy
Court entered a formal order ruling that "the automatic stay is
vacated for the limited purpose to permit the creditors Richard

Allen and Grace Allen to file a motion in New Jersey Superior
Court to clarify the debtor's leasehold rights in real property
located at 1543 State Highway 45, Swedesboro, New Jersey." (May
29, 2015 Order ¶ 1 [Bk. Dkt. No. 40]).

### ii. **February 9, 2016 Hearing**

Almost nine months later, on February 9, 2016, the parties
once again appeared before the Bankruptcy Court to resolve
similar issues.[9]  At that hearing, the Bankruptcy Court first
sought to determine whether the State Court had resolved the
issue of the parties' possessory interests under the Contract in
the time since.  (Feb. 9, 2016 Hrg. Tr. at 3:14-16 [Dkt. No.
25]).  Learning that it had not, the Bankruptcy Court ruled that
it would permit the scheduled February 17, 2016 State Court
proceeding to go forward, essentially extending the stay relief
previously ordered.  This would, in effect, allow the State
Court to "make a determination as to what the parties'
respective rights are related to – related to the lease." (Id.
at 31:7-16).[10]

---

[9] The Honorable Jerrold N. Poslusny, Jr. presided over the
bankruptcy proceedings at this stage and thereafter.
[10] The motion brought by the Allens before the Bankruptcy Court
at the February 9, 2016 hearing was that no stay relief was
required to proceed in the State Court because Ms. Thors had
failed to assume the lease under 11 U.S.C. § 365(d)(4) or that
she was not in complete possession of the property.  (Feb. 9,
2016 Hrg. Tr. at 30:13-24).  The Bankruptcy Court ruled that Ms.
Thors had assumed the lease, (id. at 30:13-17), and that
determination was not appealed.  The Bankruptcy Court

The Court also addressed a motion by Ms. Thors at the
February 9, 2016 hearing concerning violations of the automatic
stay.  Ms. Thors argued for a finding of a violation of the
automatic stay on several grounds: (1) the Allens' refusal to
accept rent from Ms. Thors under the Contract; (2) alleged
harassment of Ms. Thors by the Allens; (3) denial of access to
the property; and (4) the filing of a motion for stay relief.

First, regarding the Allens' refusal to accept Ms. Thors's
rent payments, the Court declined to rule on the issue of
whether such conduct amounted to a violation of the automatic
stay because the State Court had, to that point, been silent on
the issue of Ms. Thors's possessory rights.  Specifically, the
Bankruptcy Court ruled that:

> [I]t is unclear whether the debtor has any tenancy rights
> which would obligate her to pay rent in the first place.
> Furthermore, [counsel for the Allens] has made clear
> today that they believe the debtor's tenancy rights are
> terminated and that if the Allens were to accept the
> debtor's rent payments, they could be deemed to be
> waiving certain rights or could be deemed to have entered
> into some sort of new lease.  Until the State Court
> determines the status of the debtor's tenancy rights or

additionally continued a motion predicated on the argument that
Ms. Thors was not in complete possession of the property,
because it stemmed from the initial issue – still unresolved at
that time by the State Court – of who actually had a possessory
right to the property.  (Id. at 31:17-21 ("But as [the Allens'
counsel] said towards the end of argument, the appropriate thing
here is to go to State Court and let the State Court sort out
what the parties' respective rights are with relation to the
leased premises, and that's what I'm going to allow.")).

lack thereof, there would be little reason for the Allens to accept the debtor's rent payments.

(Id. at 32:10-17).  As such, prior to making its own ruling, the Bankruptcy Court felt "the first issue that needs to be resolved [was] whether there is a lease or not a lease."  (Id. at 33:6-9).  This required further State Court proceedings.

With regard to the willful violation of the stay as a result of "harassment" by the Allens, the Bankruptcy Court ruled that there had been no violation.  Specifically, relying upon In re Protos, Bk. No. 02-74770-MHM, 2005 WL 6491916 (Bankr. N.D. Ga Jan. 28, 2005), the Bankruptcy Court ruled that while the Allens may have harassed Ms. Thors by posting negative comments about her on social media and calling the debtor's employers to complain about her, these were not violations of the automatic stay because they were not efforts to collect the debt.  (Feb. 9, 2016 Hrg. Tr. at 33:10-34:22.)

With regard to the denial of access to the property, the Bankruptcy Court ruled such conduct did not amount to a violation of the automatic stay because Ms. Thors was "on the property on a near daily basis – so that she is not being denied access to the property."  (Id. at 35:1-3).  The Bankruptcy Court ruled that the

> continued enforcement of the State Court order that's in place is not necessarily a violation of the stay because that order only limits the debtor's access to the property to dates and times that are approved.  Until I

get some clarification from the State Court as to what, if any, rights the debtor has under the lease for tenancy, the State Court order is simply . . . this Court is simply maintaining the status quo as of the petition date.

(Id. at 35:4-12).

Finally, the Bankruptcy Court ruled that the filing of a motion for relief from the stay is not a violation of the stay, because that is a motion filed in the Bankruptcy Court.  (Id. at 35:21-25).

In summarizing its ruling, the Bankruptcy Court explained:

I'm going to continue Judge Burns' relief or not change Judge Burns' order granting relief from the automatic stay so that the State Court can move forward with its hearing on February 17th to make its determination.  To the extent that the Allens are seeking stay relief related to Section 365(d)(4) of the bankruptcy code [relating to assumption of the lease], I am going to deny – I'm going to – I'm going to deny that without prejudice . . . .  [A]nd with regard to Ms. Thors' motions for violations of the automatic stay, I am going to deny that motion.  If at some point in time it's determined that there's a lease in place, Ms. Thors may seek violations of the automatic stay related to the non-acceptance of rent, but as I've noted, I think those damages would not result in monetary damages but instead would likely result in limiting the bases for further relief related to payment or non-payment of rent.

(Id. at 36:2-37:4).

On February 11, 2016, a formal order was entered stating that the Allens' motion for stay relief was "granted to the extent that limited stay relief remains in effect to allow the parties to determine their respective rights in state court. The state court may rule on any issues it deems appropriate at

12

its scheduled hearing date on February 17, 2016[.]"  (Feb. 11, 2016 Order [Bk. Dkt. No. 94]).  The Bankruptcy Court further ordered that the Allens "shall file a status letter with the Court within 10 days of the state court entering an order" and that they "shall not take any efforts to enforce any state court order, including but not limited to, collection against or eviction of" Ms. Thors.  (Id. ¶¶ 2, 3.)

The same day it entered that order, the Bankruptcy Court also received a motion to reconsider its rulings concerning the Allens' purported violation of the automatic stay.  (Mot. Reconsideration [Bk. Dkt. No. 97]).

### iii. April 12, 2016 Hearing

On April 12, 2016, the parties once again appeared before the Bankruptcy Court, on several motions, including Ms. Thors's motion for reconsideration and a motion to continue stay relief by the Allens.  (Apr. 12, 2016 Hrg. Tr. at 3:9-17 [Dkt. No. 24]).  Prior to ruling on any motions, however, the Bankruptcy Court first examined whether the State Court had in the interim resolved the issue of whether Ms. Thors had a possessory interest in the property.  (Id. at 5:8-15).  Prior to the hearing, on February 29, 2016, the State Court denied the Allens' proposed order amounting to a judgment of possession, as follows:

> Denied.   The parties' agreement was not an ordinary
> lease.   Ms. Thors and Allens do not get along and the
> continued presence of Ms. Thors at the property has been
> increasingly difficult.   Ms. Thors has the right to
> access the property by court order to finish her film.
> Allens do not have right to lease or use barn.  Ms. Thors
> does not have right to go on horse farm.

(First Notice App. 1 at 19).  This still did not conclusively

resolve the possessory issue between the parties in the

Bankruptcy Court's eyes.  (Id. at 5:8-15 ("So to the extent

there is a leasehold, and I'm not quite sure that's exactly what

the State Court ruled.  I think the State Court basically came

up with a process or a sort of interim order giving you rights

to occupy the premises upon obtaining Court order for specific

dates and times[.]")).

With regard to Ms. Thors's request for reconsideration of

the Bankruptcy Court's determination that there had been no

violation of the automatic stay, the Court denied the motion.

Specifically, the exchange focused on whether the refusal to

accept rent gave rise to monetary damages.  As discussed, infra,

at the previous hearing the Bankruptcy Court had forecasted that

a proper remedy if that conduct did amount to a violation of the

automatic stay would be to prevent the Allens from using the

non-payment of rent as a ground to seek relief from the

automatic stay going forward.  At the April 12, 2016 hearing,

the Bankruptcy Court further noted:

> To the extent that you disagree with that, I'm not going
> to reconsider it.  I don't see that there is any new
> law, and I don't see that there has been a material
> injustice.  If you feel that – that I missed something
> or that I was wrong in reaching that conclusion and
> determining that that was the appropriate resolution of
> what I consider to be a technical stay violation, if a
> stay violation at all, then your avenue would be to
> appeal my decision . . . .

(Id. at 14:11-19).  As such, like the hearing on February 9,

2016 hearing, the Bankruptcy Court did not resolve the legal

issue of whether the Allens had violated the stay by refusing to

accept rent.  (Id.  ("*if a stay violation at all*")).  Instead,

it simply reiterated that if the refusal to accept rent amounted

to a violation of the stay, the proper remedy would be limiting

their options for stay relief henceforth.

The Court also addressed a motion by the Allens for further

stay relief on a different ground.  The Bankruptcy Court looked

to the State Court's February 29, 2016 Order, supra.  (First

Notice App. at 19).  Reviewing this decision by the State Court,

the Bankruptcy Court determined that:

> The State Court order . . . does not define the parties'
> leasehold rights nor does it address the logistics
> regarding the right or obligation of the debtor to pay
> or the Allens to collect rent or the damages asserted
> between the parties.  I think these issues should be
> brought before the State Court.  The State Court is much
> more familiar with these issues and has been handling
> these issues between the parties from some time prior to
> the petition date until now, and I believe it is the
> proper forum for these issued to be litigated.

(Id. at 24:20-25:4). The Bankruptcy Court was clear that any
order that was obtained from the State Court would not be
effectuated until the parties could again appear before the
Bankruptcy Court.  (Id. at 29:7-11).  As the Bankruptcy Court
indicated (relying upon the State Court), to the extent Ms.
Thors wanted to access the property, she would need a State
Court order permitting her to do so.  (Id. at 30:22-31:1).

   Shortly thereafter, on April 20, 2016, Ms. Thors filed the
instant appeals, arguing that the Bankruptcy Court erred in two
regards: (1) in determining that the Allens had not willfully
violated the automatic stay or in ruling that Ms. Thors was not
entitled to emotional distress for that violation; (2) granting
the Allens' request for relief from the automatic stay.

   In her briefing, Ms. Thors has also raised a third appeal
issue.  On May 3, 2016, Ms. Thors e-mailed the Bankruptcy Court
explaining her belief that she had 14 days to access her
property under Bankruptcy Law.  (Thors's App. Br. 1 at 36 [Dkt.
No. 12-1]).  Ms. Thors appears to have been referencing Federal
Rule of Bankruptcy Procedure 4001(a)(3), which states that
unless otherwise ordered by the Court, "[a]n order granting a
motion for relief from an automatic stay made in accordance with
Rule 4001(a)(1) is stayed until the expiration of 14 days after
the entry of the order[.]"  Based on subsequent e-mails, Ms.
Thors also appears to have been under the belief that unless a

16

reference to Rule 4001(a)(3) was placed into the Order, making clear that the lifting order would not take effect for 14 days, she would not be able to access her property.  (Thors App. Br. 1 at 38 ("I have had two visits at local police unless I can show a court order that I am allowed on property I will be arrested")).

Also on May 3, 2016, Ms. Thors's e-mail was answered by the staff of the Bankruptcy Court:

Ms. Thors:

I forwarded your message to Judge Poslusny.  His Response is:

No email or fax pleadings are accepted but note that Rule 4001(a)(3) applies unless waived in an order.

(Id. at 30).  No order was issued in accordance with Ms. Thors's request.

## II.   __STANDARD__

On appeal from a final order of the Bankruptcy Court, this Court reviews the Bankruptcy Court's legal determinations de novo, its factual findings for clear errors, and its exercise of discretion for abuse thereof.  In re O'Brien Environmental Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).

III. **ANALYSIS**

To the best of this Court's ability to discern, Ms. Thors presents at least three issues on appeal to this Court.[11]  First, Ms. Thors seeks reversal of the Bankruptcy Court's determination "lifting" her automatic stay pursuant to 11 U.S.C. § 362(d)(1). Second, Ms. Thors appeals the Bankruptcy Court's "Denial of Willful Violation of Automatic Stay causing emotional distress and money damages."  Third and finally, although not raised in either notice of appeal, Ms. Thors seeks review of the Bankruptcy Court's unwillingness to provide an Order outlining the applicability of Federal Rule of Bankruptcy Procedure 4001(a)(3) so that she could present it to the police.

A. **Lifting of Automatic Stay**

The first order that Ms. Thors appeals is a determination by the Bankruptcy Court on April 12, 2016 granting limited relief from the automatic stay provision so the parties could proceed in the State Court.[12]  (Thors App. Br. 3 [Dkt. No. 12-3]).  "The purpose of the automatic stay provision is to afford

---

[11] In the time since the filing of both bankruptcy appeals, this Court has been inundated with calls and filings from Ms. Thors. It has been no easy task to discern exactly the issues Ms. Thors seeks reviewed.
[12] The Court notes that the issue of whether the stay even applied to these proceedings remains open.  The Court does not address this issue both because the parties do not address it and because the Court finds that there was no abuse of discretion even if the stay had been in effect.

18

the debtor a 'breathing spell' by halting the collection process, and the stay enables the debtor to attempt a repayment or reorganization plan with an aim toward satisfying existing debt." In re Hartman, Civ. A. Nos. 15-4437 (ES), 15-5060 (ES), 2016 WL 1183175, at *7 (D.N.J. Mar. 28, 2016) (internal quotation marks omitted). Pursuant to 11 U.S.C. § 362(d)(1), "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or condition such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." Id. "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997). Whether to grant such relief from the automatic stay "is a decision committed to the bankruptcy court's discretion, and may be reversed only for abuse of discretion." In re Hartman, 2016 WL 1183175, at *7. A Bankruptcy Court abuses its discretion "where the court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." In re SGL Carbon Corp., 200 F.3d 154, 159 (3d Cir. 1999)).

Ms. Thors's argument in this regard is very difficult to decipher,[13] but appears based on the fact that the Allens and their counsel made use of "fraud, lies, untruthful information[,] malice[, and] evilness" to secure stay relief. (Thors App. Br. 3 at ¶ 14.)  Ms. Thors cites, as well, the Allens' unwillingness to accept rent from her and their purported use of her non-payment as grounds for stay relief. (Id. at ¶ 42, 88).

The Court finds no abuse of discretion with regard to the Bankruptcy Court's decision to grant limited stay relief to determine the possessory interests of the parties.  The Bankruptcy Court, on separate occasions, awarded limited stay relief to permit the State Court proceedings to go forward to determine the parties' relative possessory interest in the properties.  Contrary to Ms. Thors's argument, this had nothing to do with the non-payment of rent or any factual representations made to the Bankruptcy Court by the Allens concerning the parties' relationship outside of State Court. Instead, the Bankruptcy Court – for purposes of determining both what was a part of the bankruptcy estate and clarifying a legal

---

[13] Further complicating the unraveling of Ms. Thors's arguments is that many of those raised concerning the Bankruptcy Court's grant of stay relief to the Allens explicitly argue that the Allens violated the automatic stay, a separate issue that was separately briefed.  See, e.g., Thors App. Br. 3 at ¶¶ 77, 79.

issue that was throwing a wrench in the ability of the
bankruptcy to proceed – sought clarity on whether Ms. Thors had
a leasehold.  (April 12, 2016 Hrg. Tr. at 24:20-25:4 ("I think
these issues should be brought before the State Court.  The
State Court is much more familiar with these issues and has been
handling these issues between the parties from some time prior
to the petition date until now . . .")).  In making these
decisions, the Bankruptcy Court relied on the orders issued by
the State Court, not representations by the Allens about their
business dealings.  (Id. 23:23-24:8 (quoting State Court
order)).  Put simply, the lingering issue of the parties'
contractual relationship to each other was the root of much of
the vitriol between them and the legal cloud which had overtaken
the bankruptcy proceedings.  The State Court was both the more
capable and the more proper venue to resolve these issues, and
the Bankruptcy Court wisely permitted it the leeway to do so.

Moreover, the Bankruptcy Court properly and explicitly
tailored its ruling to the resolution of the property issues and
considered the hardship that would befall Ms. Thors if the
proceedings were allowed to go forward.  See generally In re
Blan, 237 B.R. 737, 739 (8th Cir. 1999) ("In making the
determination of whether to grant relief from the stay, the
court must balance the potential prejudice to the Debtor[,] to
the bankruptcy estate, and to the other creditors against the

hardship to the moving party if it is not allowed to proceed in state court.").  The Bankruptcy Court noted the State Court order prevented the Allens from using, entering, working on, or damaging the barn about which Ms. Thors was concerned.  (Id. at 24:4-8).  The Bankruptcy Court also noted "if and when a judgment is entered, you'll have to return to the Bankruptcy Court to determine how that affects the bankruptcy case.  I think that the protections that the State Court came to are akin to an automatic stay prov[id]ing Ms. Thors with some protections while at the same time providing the Allens with certain protections as well."  (Id. at 25:13-18).

The vaguely-articulated "lies" that Ms. Thors argues the Allens made to secure the lifting of the stay concerning her non-payment of rent, or the reporting of her for animal cruelty, did not factor into the Bankruptcy Court's decision to lift the stay.  Ms. Thors can point to no such evidence.  Contrary to the assertions of Ms. Thors and as ably set forth by the Bankruptcy Court, the reason for the lifting of the stay was not to enable the Allens to evict or dispossess Ms. Thors – indeed the stay relief ordered by the Bankruptcy Court was limited and tailored to avoid such a caustic affect.  (Id. at 29:7-11 ("Once that issue is resolved – I'm not lifting the stay to allow the Allens to take any action absent moving to a judgment.  In other words, you will come back here once a judgment is rendered one way or

22

the other to determine how that affects the bankruptcy case.")). Instead, the parties were simply to obtain legal clarity on the ownership issues so the bankruptcy proceedings could go forward with an understanding of the legal posture of the case; i.e., whether the automatic stay applied or not depended upon whether Ms. Thors had a possessory interest, see supra.

Ms. Thors's argument that the Court must enforce the no eviction policy of the Contract is also both incorrect and not relevant.  (Thors App. Br. 3 at ¶ 24.)  The issue of whether the Allens can or cannot evict Ms. Thors under the Contract is an issue of state law that was unrelated to the bankruptcy proceedings.  Neither this Court nor the Bankruptcy Court is permitted to sit as an appellate court to the State Court eviction proceedings.  In re Madera, 388 B.R. 586, 596 (E.D. Pa. 2008) ("[T]he Rooker-Feldman doctrine is a statutory-based doctrine which stands for the proposition that lower federal courts possess no power what[so]ever to sit in in direct review of state court decisions.").  To the extent eviction proceedings should be stayed by the automatic stay, that issue could not be decided by the Bankruptcy Court absent a resolution of the parties' actual rights to the property, again, as discussed above.  This was the very reason for granting the stay relief in the first place.

In sum, the "cause" standard under 11 U.S.C. § 362(d)(1) requires the Bankruptcy Court to analyze the issue under the totality of the circumstances to determine if relief from the automatic stay is proper.  Any reasonable reading of the complicated and contentious proceedings that have gone on in this case makes clear that the resolution of the threshold issue of the parties' lingering property dispute was vital to allowing the bankruptcy proceeding to go forth.  Given the Court has reviewed the Bankruptcy Court's decision under that lens and Ms. Thors has pointed to no other abuse of discretion by the Bankruptcy Court, the order granting limited stay relief at the April 12, 2016 hearing is AFFIRMED.

## B. **Willful Violation of Automatic Stay**

Ms. Thors's second contention on appeal is that the Bankruptcy Court erred in denying her motion seeking emotional distress damages from a willful violation of the automatic stay. (Thors App. Br. 2 [Civ. No. 16-2224, Dkt. No. 12-2]).  Pursuant to 11 U.S.C. § 362(k)(1), "[A]n individual injured by any willful violation of a stay provided by this section <u>shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.</u>"  <u>Id.</u> (emphasis added).  As such, "the provisions of the statute come into effect upon a showing that (1) a violation of the automatic stay has occurred; (2) the violation was

24

willful; and (3) the willful violation has caused injury to the debtors." Innovasystems, Inc. v. Proveris Scientific Corp., Civ. A. No. 13-05077, 2014 WL 3887746, at *7 (D.N.J. Aug. 6, 2014) (citation omitted). While several grounds were advanced before the Bankruptcy Court for finding a willful violation of the automatic stay in the February 9, 2016 hearing (and again on reconsideration), only two grounds appear to be advanced on appeal for finding a willful violation of the stay: (1) the Allens' refusal to accept rent payments from Ms. Thors, (Thors App. Br. 2 at ¶ 127); and (2) their harassment of Ms. Thors, (id. at ¶ 116, 124).

With regard to the Bankruptcy Court's determination at the February 9, 2016 hearing that the Allens' harassment of Ms. Thors does not amount to a violation of the automatic stay, this Court agrees with the Bankruptcy Court's factual determination and reasoning. The Bankruptcy Court relied upon In re Protos, Bk. no. 02-74770-MHM, 2005 WL 6491916, at *2 (N.D. Ga. Bankr. Jan. 28, 2005), which held that where the harassment was not "directly aimed at collecting a debt," the automatic stay was not violated because the harassment was not with the purpose to collect the debt. Ms. Thors points to little record material demonstrating the alleged harassment, but does argue that the Allens "stop[ed] my clients and customers before able to come to my stable/film studio, to do business with me." (Thors App. Br.

2 at 123).  While these allegations, if credited, as well as the
discussion of social media threats and calls to the police
concerning Ms. Thors are certainly evidence of the rancor that
has developed between the parties over their deteriorated
relationship, the Bankruptcy Court did not err in finding that
these actions were unrelated to the collecting of a debt.  See
In re Protos, 2005 WL 6491916, at *2 ("The inference is too
weak.").  The Bankruptcy Court's determination is AFFIRMED in
this regard.

With regard to Ms. Thors's argument that the non-acceptance
of rent by the Allens amounts to a willful violation of the
automatic stay, the Court finds that issue does not appear to be
properly before this Court because the Bankruptcy Court has not
finally determined that the Allens' refusal to accept rent was a
willful violation of the stay.  The Bankruptcy Court appears to
have reserved ruling on this issue because the issue of
possession had not yet been clarified by the State Court as of
the time of the hearing.  It seems to this Court that the
Bankruptcy Court has only noted that if such refusal does amount
to a violation of the stay, the proper remedy in its eyes would
be to preclude the Allens from using the non-payment of rent as
grounds to seek relief from the automatic stay going forward.
(Apr. 12, 2016 Hrg. Tr. at 14:18 (noting that the Court may not
even consider the refusal to pay rent to be a stay violation at

26

all)).[14]  Such prospective language does not amount to a final order able to be reviewed by this Court.  28 U.S.C. § 158. Indeed, it is not an order to be appealed at all.  Accordingly, Ms. Thors's appeal is dismissed for lack of jurisdiction by this Court over a final order.

### C. Failure to Supply Notice of Rule 4001(a)(3)

Ms. Thors's final appeal brief concerns the supposed refusal by the Bankruptcy Court to include language in an order stating that pursuant to Bankruptcy Rule 4001(a)(3), any stay relief order does not go into effect for 14 days.  Ms. Thors argues that this purported failure by the Bankruptcy Court prevented her from accessing property she claims as hers. (Thors App. Br. 1 at ¶¶ 17-20).  Ms. Thors's belief, whether right or wrong, that she could not enter the property except during the 14-day delay does not give rise to grounds to appeal the Bankruptcy Court.

First, this issue is not properly before the Court.  While briefed in connection with the other appeals, the relevant e-mails all took place well after the filing of these appeals. Furthermore, an ex parte e-mail exchange with chambers staff

---

[14] Thus, the Court does not reach the issue of whether the remedy forecasted by the Bankruptcy Court would be sufficient under the statutory language that provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees . . . ."  11 U.S.C. § 362(h) (emphasis added).

does not strike this Court as a final order capable of being appealed.  As relevant to this case, this Court only has jurisdiction to hear appeals from final orders.  See 28 U.S.C. § 158(a)(1).

More fundamentally, Federal Rule of Bankruptcy Procedure 4001(a)(3) simply states that all orders granting relief from the automatic stay are themselves "stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Id.  The fact that the Bankruptcy Court did not include this default rule in a written order that Ms. Thors could use to present to the police for purposes of gaining access to her purported property is not a form of error, let alone one this Court could review.[15]

**D. October 17, 2016 and October 18, 2016 Filings**

Ms. Thors has also filed two additional documents with this Court concerning ongoing issues at the property and requesting an additional free transcript.  [Dkt. No. 26, 27].

Ms. Thors's motion for an additional transcript for a time period beyond the time when this appeal was filed is DENIED without prejudice.  [Dkt. No. 22].  To the extent that the May 3, 2016 hearing before the Bankruptcy Court becomes relevant to

---

[15] For the same reasons, and the additional reason that such a motion would not properly be before this Court, Ms. Thors's "Emergent motion" on this issue is DENIED as well.  [Dkt. No. 6].

a future appeal Ms. Thors takes, she may renew the motion at that time.

Ms. Thors has additionally "appealed" the Allens' alleged violation of a May 3, 2016 Bankruptcy Court Order by filing a supplemental appellate brief on the topic.  [Dkt. No. 26, 27]. This "appeal," which is too late to be included in the briefing or oral argument in this matter and improperly taken under the Federal Rules of Bankruptcy Procedure, Fed. R. Bk. P. 8002, appears to ask the Court to make factual findings of its own concerning the inability of Ms. Thors to access her property. This Court lacks the jurisdiction to hear such appeals.  Any request for a finding that the Allens violated the automatic stay in this regard must first be brought before the Bankruptcy Court.  As such, even if this issue had been a part of Ms. Thors's appeals before this Court, it would be dismissed for lack of jurisdiction.

IV.   **CONCLUSION**

As set forth above, the order of the Bankruptcy Court granting limited stay relief is AFFIRMED.  The Bankruptcy Court's determination that the Allens did not violate the automatic stay by harassing Ms. Thors is AFFIRMED.  Ms. Thors's appeal of the Bankruptcy Court's advisory determination regarding the Allens' willful violation of the automatic stay for refusing to accept rent is dismissed for lack of

jurisdiction.  All remaining appeals are dismissed for lack of jurisdiction.  Ms. Thors's motion for a fourth free transcript is DENIED without prejudice to being re-raised in a future appeal.  Ms. Thors's motion for emergent relief, [Dkt. No. 6], is DENIED.

DATED: December 16, 2016

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE